We'll turn to the next matter on today's calendar Abrams v. Carranza 23 899 Good morning. My name is Rory Bellantoni. I'm here for the appellant plaintiffs. This is a case not just about pendency, not a case where the plaintiffs came to federal court to establish pendency. This is a case where the Department of Education was ordered to pay pendency. To pay pendency because the private school placement in this case was eyebrained at the end of the 2018-19 school year. There were substantive hearings, hearings that resolved due process complaints, where hearing officers found or SROs affirmed that the parents' unilateral placement to this private school was proper, that the district denied these children a fate in the first place, and that reimbursement was appropriate. So as these children moved into the 2019-20 year, pendency orders were issued on their behalf. Orders. These were orders which the DOE ceased abiding by, without a stay, without permission of the court. The DOE will tell you that they were taking it upon themselves to make sure these services were being provided. The district court called this some kind of administrative review. But the IDEA doesn't call for a post-hearing administrative review by the DOE. It doesn't allow it. This is what Judge Preska eventually found in the LV case. Because eyebrain wasn't the only school that the DOE ceased funding. So if the DOE thinks there needs to be more documentation that the services were provided, for example, then you're saying they have to pay the money out first? What do they do if they get a request for reimbursement of funds and they have more questions about whether or not the services were provided or not? You're saying they have to pay the money up front? Your Honor, yes in this case, because this is not a reimbursement case. Dependency was prospective from the beginning of the school year. They just don't pay it all at once. They pay it monthly. If they don't want to pay an entire year's worth of tuition through a pendency mechanism, they can provide the children with a fee. If they don't want to pay it all, as the Supreme Court said in Carter, they cannot take IDEA funds from the federal government. The question is, what is wrong with having an administrative process pursuant to which the DOE can satisfy itself that the payments it makes in response to a request for payment are for real services, for services that were actually rendered? Your Honor- How is that a violation of the IDEA? There was no administrative process. The DOE called it that. If they really wanted to commence when they could have come to court and got a stay or requested a stay. What Judge Preska found was they were creating an administrative process. Only they knew the rules. That's your answer. Your answer is if they think, for example, there's a fraud going on, right? Say that again. I'm sorry. They think there's a fraud going on, that the funds being sought by the school are for services that are not really being provided, busing that didn't happen, for example. You're saying they have to pay out that money to the school anyway, or the only option they have is to seek a stay of dependency order. Is that what you're suggesting? Your Honor, they never went that far. Magistrate Judge Fox at a conference asked, are you alleging there was fraud here? They never said that. They never said that. And as to busing- I'm assuming that is an example. It could be just that they want more documentation that the services were provided. Not necessarily fraud, but look, we want to make sure before we pay the money that the services were in fact provided. They could have paid the money, and if there was fraud, they could have recouped that money. Dependency, the rule where you can't recoup pendency payments if you ultimately win, wouldn't necessarily apply to fraud. If there was a fraud, if there was a crime and they paid, they could have gotten their money back. And Judge, let me just add, this was not just fraud out of thin air. This was COVID. The DOE paid their busing contractor $5.8 million a day from March through May. $585,000 an hour, and their buses never ran. They said they did that because there was a contract. The buses that I ran were running. They were ready, willing, and able to bring these children to school when they wanted to, and eventually most returned to school. It was in May, and Judge, just so we're clear, we didn't say it was a fraud. It was an alternative reason they didn't pay. Because Ibram was educating these children when the governor said they had to close their building. They wanted it both ways. They wanted to say the services weren't being provided, so we don't have to pay. All right, but on the bottom line legal issue, their position is if there's no risk of losing the payment because this dealt with a school year that was already over, that they can withhold the funds and the automatic injunction provision of 1415J does not apply, that there's no risk of losing the payment. So what's your response to that? 1415J applies until the underlying due process hearing is over. 1415J would actually move into the next year as it did when Judge Schofield ordered that they continue to pay penancy in the next year. I saw that. Penancy only ceases when they have an administrative law judge complete the due process hearing. In the Judge Schofield case, which dealt with Ibram as well, 33 more students, DOE took the position in that case that even though the school year was ongoing, they were going to withhold the money in an ongoing school year because they, again, wanted to review it and they believed there was no risk of losing the placement. And Judge Schofield said, no, you have to pay up. Correct. Because the pendency provision exists as an automatic injunction. We don't have to come to court. In order to make sure the children don't end up having their placement threatened. There is no requirement that you show that there's a risk of losing the placement in order to have that automatic injunction apply. Absolutely not. In fact, if you look at one of the cases that we cited, when the district court judge asked, there's nothing that links penancy to payment. There's not one case, counsel. And by the way, the DOE hasn't cited a single case, nor did the district court, that would allow them to do what you're suggesting. Not a single case. I'm going to ask them about that because I couldn't find a case either. But go ahead, finish your thought. When the district court asked, do you have a case that says payment and funding go together? Because the district court said they don't. Mr. Albert said, yes. They go hand in hand. Where's that case? Eventually it was cited on a record. Amar v. Ridley in the Third Circuit. There was some argument in the district court presented that this could jeopardize their placement because the school was losing so much money, couldn't pay its rent. So there was an issue that the school was in trouble. In which case? In this case. Okay. Ridley was interesting because the Third Circuit allowed retroactive penancy going back three years. When the three years were complete, where the school district provided a fate, but it took three years for that case to resolve in the Third Circuit. And the pendency provision applies through the completion of all judicial and administrative proceedings. The Third Circuit has said from the filing of the due process complaint to when they made their decision. If the DOE withholds payments for the past school year, and the parents, by contract, are then on the hook for that money, right? With the school? Is that accurate or not accurate? They would be. By contract? Yes. Yes. And there's some indication that DOE has argued at times, well, isn't there an agreement that if the parents lose, they don't have to pay the money back? A, no. But in this case, the parents won. The parents won, and they didn't pay. So why would the school forgive that money? Again, Mr. Thurman made this argument below that there was some belief that there wasn't a real agreement. That IBRA would forego the money if the parents lost. But here they won. They won the underlying due process complaint. And again, Judge, when you say some reasonable paperwork, what happened here was paperwork. Here's the response. More paperwork. Not responsive. Here's the response. More paperwork. This wasn't just a question of are you providing the services? Mr. Bellantoni, this is Judge Lilliot. Hi. Thank you. Did you – I'm asking you a question. I'm right here. Did you provide all this information to Judge Etkin? I'm sorry? Did you provide this information? Did you make these precise arguments to Judge Etkin in connection with the injunction? We made them in the original application. We moved for another preliminary injunction in September and reconsideration in November, October. And he denied each motion, and he denied the reconsideration motion, and went back to run the record. And with respect to DOE's argument that they did not have sufficient information, what argument did you – what response did you provide to the disreport? We provided all the information we could, number one. And if the question was – What was that? We answered every single question. They had a series of questions. We answered them. We sent letters. We advised which kids were in school at what time, which kids were home remote. Then the question came back, if they were remote, were they using an Apple computer or a Windows computer? Okay. Most of the platform is Apple. Well, if it was an Apple computer, was it this level or that level? And, Your Honor, it's interesting because we provided everything we could. The judge let discovery continue. When we hit a point in December where this looked like it was going to keep going, and I asked the DOE for the very same thing they were asking for Iberian for. Are you teaching your kids? Your gym teachers, are they being paid? Are you busing these kids? Are you paying for busing? How are you educating your special ed students? I didn't get an answer to any of my discovery. Discovery ended. We moved on to summary judgment motion. I didn't pursue it because I didn't think this should be a substantive case. This should have been more like a contempt motion. There were orders. I proved there's an order. I proved they're not paying. Let them explain to the judge. In that first conference, which is in the appendix beginning at 7-7-1, it's the transcript. The district court judge on the phone asked Iberian for the first half an hour, 45 minutes. I should say Berg, the attorney for the students, about Iberian, about the program. Not DOE. I want to know first and foremost why you stopped paying, who authorized you to stop paying, and if you had paid and there was a fraud, why couldn't you have recouped that money? Because the normal penalty won't apply to a crime or a fraud, as your Honor suggests. Okay. Let's hear from the city and then you've reserved some time for rebuttal. Yes, Judge. Thank you. Good morning, Your Honors, and may it please the Court. I'm Alan Racinus, representing the Department of Ed and the DOE Chancellor. Your Honors, we think that this case, which is an appeal for a denial of a preliminary injunction, can be decided on relatively narrow procedural grounds and that it should be decided on those grounds. First, there's no entitlement to an automatic injunction. And second, there's no real harm. As to the first point, Your Honors, the automatic injunction applies when a student might lose his or her placement for the current school year because payment for the current school year is not being made. That is not what's happening here. This is about a past school year, a couple months in 2019 to 2020. And it's also worth noting, Your Honors, that... ...an additional requirement to the automatic injunction. We have said multiple times that the funding of a pendency placement is inherent to the state put provision. That the city has to pay that money if it's a pendency placement, right? We've said that multiple times. And you're saying, forget about those cases, that binding precedent, because this dealt with a past school year, there was no risk of losing the placement. So you're saying that there is, in order to have the automatic injunction, there has to be a risk of losing the placement. Isn't that what the city is arguing here? I think, Your Honor, that we're not asking for a modification or a change in the standard so much as we're saying that the standard does not apply on the facts of this case, which is what Judge Eichmann has said. We have never said that they have to show there's a risk of losing the placement. We've assumed that we don't want to have the parents have to get into litigation over that. They have a pendency placement. They should get the funds for that while there's any dispute going on. That's been the law for over a decade in the Second Circuit and I think everywhere else. I don't think there's any case in any circuit where a court has said that the school, the school district, the Department of Education can withhold funds for a pendency placement because there's no risk of losing the placement. Which case says that? Your Honor, there's no case that says that. What we're saying is that I agree. So we're changing the law. We're changing the law. We're going to be changing the law and adding a requirement that they show they can actually lose the placement. So even if it dealt with a current year, right? As a matter of fact, in Judge Scofield's case, that's what the city argued. That was a current year and there were 33 students at I-Brain and the city argued in that case. It wasn't a past year. It was a current year. The city said exactly what you're saying to us. There's no risk of them losing the placement, so we're not going to pay the pendency funds. And Judge Scofield said no. The law is you have to pay the pendency funds. You may be able to recruit them, but you have to pay them first, right? Isn't that what Judge Scofield said in that case? I don't remember exactly what he said in that case, Your Honor. I agree with you that pendency payments are not contingent on some risk of the child losing the placement. But that's a pendency payment. That's not an automatic injunction to pay pendency in the context of a request for preliminary relief. And that's the distinction I think that Judge Etkin was drawing and that's the distinction that we're drawing. All of the cases, because the only reason that you should get an automatic injunction in the context of pendency is when there is some chance, because the whole point is to preserve the underlying statutory right under 1415J. No, but there is, putting aside, again, having to prove this in each individual case, there's always the chance, even if it's a past year, the school could, in this case, because it's multiple students that the DOE is taking the same position on, lost a million dollars of funding, the school could go under because it's not getting funding. The parents are on the hook on the contract. That's obviously not what the IDEA intends, that the parents have to deal with the possibility that they're going to be on the hook for the money. So even though it's a past year, there are all types of ramifications to the school and to the family if the city withholds the money. Am I missing something? Well, two points, Your Honor. First, on page 779 of the appendix, the plaintiff's lawyer himself said that they weren't at risk of losing their placements because the school year, in his words, had come and gone. As I understand it, you can get to your second point, but that's exactly what Jodekin relied on. That is an agreement at the July 30, 2020 hearing that the parties agreed that the students' placements were not at risk. So it seems to me that that's maybe a waived argument about the risk to placement, but is that the city's position or is that you're taking another position? A waived argument by the plaintiffs, Your Honor? Yes. If you agree before the district court judge that a placement is not at risk, why is that not a waiver of the argument that the placement is at risk, whether it's past or in the future? I mean, whether you characterize it as a waived argument or whether it's just a stipulated fact, I think it has the same effect, which is to say that, in our view, it takes this case out of the criteria under which a set of plaintiffs would be entitled to an automatic injunction. The one thing I wanted to add, Your Honor, is that it's a practical note, a factual development since we filed our brief in this appeal, is that the LV decision came down by Judge Preska, and without taking a position on whether or not that decision was right, that decision basically said that we could not conduct an administrative review before paying tuition. So we had paid the tuition for these children for the 2019 and 2020 school year or are in the process of paying. Why didn't you say that at the beginning? I was going to get there, Your Honor. I think the principle is the same, even if that had not happened. But I think it's another reason that takes this case out of the automatic injunction, an additional reason, not a necessary one, that takes this case out of it. So you're saying that this is a concession or overwhelming proof that there's not a high risk of losing the placement. We're adding this risk of placement exception to the automatic injunction. Yes or no? Yes, Your Honor, if my character isn't that way. Again, I would characterize it as- Which no court has ever done in any circuit. They've all said the automatic injunction is automatic, and you get the funding. That's what every other court, including our court today, up to today, has said, right? I don't think the issue has- This issue has not come before this court with this factual situation, as far as I know. I mean, the two cases, the main two cases involved, the TM case and the ZD case, both very clearly- You have all sorts of fact patterns where you could argue there's no risk of losing the place. Suppose the parents are billionaires, and if the city doesn't pay the tuition, the parents can obviously reimburse the school and litigate with the city. Why wouldn't those parents then also not get the automatic exception, automatic injunction? There's no risk of losing the placement. The parents have the money. Your Honor, I would say that that's at least a much more speculative case in that- Well, it's uncontroverted. The student is not going to leave that school. The parents are not going to let their kid get expelled from the school because there's no tuition. They're going to pay it, so no automatic injunction, right? In that case, perhaps so, Your Honor. Yes, I think that may be true. If that were something that were evidence that were- So in every case, there could be litigation over whether or not, in fact, there is going to be a loss of the placement. Here, maybe it was conceded. Maybe it wasn't. But in every case, that would have to be looked at. I mean, I don't know that we have to go that far, Your Honor, because in this case, it was voluntarily said by counsel. The alternative would be if we said the city, the automatic injunction is automatic, and therefore the city has to pay the money if they believe there's a fraud or there's improper documentation. They have two choices. One is, as was suggested by your adversary, go and get a stay of dependency order, saying we believe there's insufficient documentation or we believe there's fraud. We're asking for a stay of dependency order. We don't want to pay until we clarify this, right? The city could always do that, right? Yes or no? Yes, Your Honor, that's right. All right, what's so bad about that? I'm sorry, Your Honor? What's so bad about that option? Why isn't that a better mechanism, given the concerns about the students being able to stay where they are? It is certainly one option, Your Honor. We don't think it was necessary. It's necessary in terms of the application of the automatic injunction, or at least in terms of not applying that injunction. Even if the city didn't get a stay, if the city paid the money out, the suggestion was, and I think it's accurate, the city, if there was fraud, if it turns out there's some insufficient documentation the services provide, the city could seek to recoup that money back from the school, right? It probably could, Your Honor. I'm not sure exactly what the mechanism would be, but it probably could. Well, I think one thing that's worth noting also is that the only thing that remains right now essentially is the transportation costs. And at least as to some of the penancy orders, those orders seem to contemplate that transportation will actually be provided before any payments are made. So given where we are now, there's also a question of even if, for the sake of argument, the automatic injunction applies, which we don't think it does, there would still be a question of whether it would extend to the particular payments that remain at issue in this case. So we ask that this court affirm, Your Honors. Thank you. Before you sit down, so just to go back to the revelation, where exactly are we then? That is, what do we need to decide? So you say affirm, but what is it exactly that we are deciding? What's left? What's left, Your Honor, is the transportation costs and anything. I mean, my colleague may— So it's still left, okay. So that's definitely left, Your Honor. I mean, some of the tuition payments may still be in process, but we have agreed to pay them. If this court were to refer to the declaration of Thomas Beam in the district court summary judgment as part of the summary judgment opposition that we filed, there's a discussion of exactly who's been paid when and whose tuition has been paid when and so forth. And that's worth flagging just quickly, Your Honor, simply that the merits are now before the district court. The plaintiffs have filed a summary judgment motion that's pending before the district court. With respect to the payment of transportation costs. Yes. I mean, the way they want it, Your Honor, is they want all parts dependency orders that have not yet been complied with. But in our view, that means basically transportation only, in effect. But in short, Your Honors, we do think that not so much this is a change to the automatic injunction rule as a novel question as to whether or not the rule extends to this circumstance. We don't think it does. And as we say at length in our brief, we don't see irreparable harm under the traditional four factor preliminary injunction test. So if there are no further questions from Your Honors, we ask that this court affirm. Thank you. If I may address transportation first. There are no pendency orders that require or have any language about actually providing for the 19-20 year. There may be some the following year because this issue came up. And the DOE did what they should have done in the first instance. They addressed that in those hearings. In our case, transportation is a related service. The parents were told what it would cost for the year in August. It's 212 school days. Two trips a day. 90 to 60 minutes in a van with one paraprofessional or nurse for each one of these children because they're in a wheelchair. That costs anywhere between 85 and I don't know what a day. So it's $85 for one trip times two times 212 days. That's the cost of transportation. That's an integral part of the tuition. In the LV case, many of those schools actually included the transportation in the tuition cost. Which as Magistrate Fox said in a conference we had, if that was part and parcel of tuition like lunch, and these children were home virtual learning, the DOE wouldn't withhold the amount of money spent on the lunch. In this case, there's no fraud. This is the pandemic that affected the school district in the way it did. It was all hands on deck. It was CARES money for the New York City School District with $32 billion allotted for bus companies like this one. Which they didn't pass through to the bus company. It seems to me this issue is potentially close to becoming moot. If in fact, because of Judge Prescott's decision, they've now paid for this current school year, right? Is that accurate? They have not paid the transportation. Even for this year? For the current year? Yeah. Let me put it another way. All that's left in this case, just going back to Judge Loya's question, is the transportation cost that they refused to pay from last year. Correct? Isn't that all that's left in this case? Correct. But may I, when you say all that... Hold on. Hold on. If you win, there's a summary judgment motion pending? Yes. If Judge Grant's summary judgment on that, this is moot. You don't need an automatic injunction. You now have the money, right? If it happens the way you ask, yes. So that's been pending since August, correct? Yes. Okay. But may I? Go ahead. It's not going to happen the way you suggest. Okay. Because there's questions of fact. We say you should pay all. They say only responsible for the actual rights. This is the problem with when the district court departed from the standard, which, by the way, my colleague said pendency kicks in when placement is in danger. No, it doesn't. It kicks in when a parent files a due process complaint for the new school year. That's the automatic part of it. Is the summary judgment motion, is that all fully submitted? Is it ready to go? Is it ready for disposition? Fully submitted. Yes. Yes. But the problem, again, and I was alluding to, by not dealing with this issue, in my opinion, the way the district court should have, we were put in the position, we filed the action, right? Because the DOE was doing nothing. We had to do something. Because we did something, we have the burden of proof. It's proof that we're entitled to what we were already entitled to. Now, I'm hearing. Did you concede below that there was no risk to the placement? Was that conceded below? In the context of the conversation, the question was, are they going to be kicked out of the school? Tony, would you just answer yes or no to that question? I'm sorry. We conceded they weren't going to be kicked out because there's a governor's moratorium on eviction. Okay. But if the school couldn't pay teachers, and we lost teachers, then the placement, meaning the educational program would have been at risk. Placement involves more than the brick and mortar building. That was in response to the issue about eviction. There was an argument that the school is $600,000 in arrears or something like that, right? And in response to that, it was said that because of the moratorium, there can't be an eviction. So they're not in danger of being kicked out? Am I characterizing that correctly? At the time. Right. But when the moratorium is over, if they're behind, they're in danger of being kicked out or subject to a holdover proceeding. All right. I just wanted to mention, again, this court's decision in Ventura, in Paulino, this court said that where the IDA state foot provision is implicated, the provision triggers the applicability of an automatic injunction designed to maintain the child's educational status quo. There was no question in that case whether a child was going to be out of the school. It was just one school or the other. This court applied the automatic injunction but found there was no pendency at either end. Nonetheless, this court held that the students didn't have to show any of the traditional factors. It wasn't a question about whether the child or children were going to be displaced. Thank you very much. Thank you, Judge. We'll reserve the decision.